1  JOSEPH A. YANNY, ESQ., SBN 97979
   RAPHAEL B. EMANUEL, ESQ., SBN 218755
2  KIM D. ASHLEY, ESQ., SBN 253160
   YANNY & SMITH
3  1801 Century Park East, 23rd Floor
   Los Angeles, California  90067
4  Telephone: (310) 551-2966
   Facsimile: (310) 551-1949
5
6  Attorneys for Plaintiff Kippys, Inc.

7

8            IN THE UNITED STATES DISTRICT COURT

9         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11
   KIPPYS, INC., a California Corporation,        NO.: 08 CV 0397H
12
                                                  MEMORANDUM OF POINTS AND
13                 Plaintiff,                      AUTHORITIES IN SUPPORT OF
                                                  PLAINTIFF'S EX PARTE
14  v.                                            APPLICATION FOR A TEMPORARY
                                                  RESTRAINING ORDER AND AN
15  ABOUT ATTITUDE, an entity of unknown form,    ORDER TO SHOW CAUSE RE:
   13817 Village Mill Drive, Suite 200, Midlothian, PRELIMINARY INJUNCTION
16  Virginia 23114; KIM LOGUE, an individual, and
   DOES 1 through 50, inclusive,
17
18                 Defendants.

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

*Page*

3   MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

4   I.      INTRODUCTION..........................................................................1

5   II.     STATEMENT OF FACTS................................................................1

6           A. Kippys' Trademarks...............................................................2

7           B. Kippys' Copyrights................................................................3

8           C. Defendants' Unlawful Conduct...................................................3

9   III.    DISCUSSION..............................................................................5

10          A. Standards for Issuing a Temporary Restraining Order and Preliminary

11             Injunction.........................................................................5

12          B. Likelihood of Success on the Merits............................................6

13          C. Irreparable Injury................................................................14

14          D. The Balance of Hardships Favors Kippys......................................17

15          E. The Issuance of an Ex Parte Restraining Order is an Appropriate Remedy...17

16  IV.     CONCLUSION............................................................................18

17

18

19

20

21

22

23

24

25

26

27

28

i

### TABLE OF AUTHORITIES

*Page(s)*

### FEDERAL CASES

*Abkco Music, Inc. v. Harrisongs Music, Ltd.,*
    722 F.2d 988 (2d Cir. 1983)...................................................................13

*Accuride International, Inc. v. Accuride Corporation,*
    871 F.2d 1531 (9th Cir. 1989)................................................................6

*Alfred Bell & Co. v. Catalda Fine Arts, Inc.,*
    191 F.2d 99 (2d Cir. 1951)...................................................................12

*Americana Trading, Inc. v. Russ Berrie & Co.,*
    966 F.2d 1284 (9th Cir. 1992)............................................................9-10

*AMF v. Sleekcraft,*
    599 F.2d 341 (9th Cir. 1979).......................................................8,9,10,11

*Apple Computer, Inc. v. Franklin Computer Corp.,*
    799 F.2d 1219 (8th Cir. 1986) *cert. dismissed*, 464 U.S. 1033 (1984).............16

*Arnstein v. Porter,*
    154 F.2d 464 (2d Cir. 1946)...................................................................13

*Atari, Inc. v. North American Philips Consumer Electronics Corp.,*
    671 F.2d 607 (7th Cir.), *cert. denied,*459 U.S. 880 (1982) .......................13

*Brookfield Communications, Inc. v. West Coast,*
    174 F.3d 1036 (9th Cir. 1999)........................................................6,11,14

*California Cedar Products Co. v. Pine Mountain Corp.,*
    724 F.2d 827 (9th Cir. 1984)................................................................15

*Century 21 v. Sandlin,*
    846 F.2d 1175 (9th Cir. 1988)...............................................................10

*Citibank N.A. v. City Bank of San Francisco,*
    206 U.S.P.Q. 997 (N.D. Cal. 1980)........................................................15

*Concrete Machinery Company, Inc. v. Classic Lawn Ornaments, Inc.,*
    6 U.S.P.Q.2d 1357 (1st Cir. 1988).....................................................13,17

*Eclipse Associates, Ltd. V. Data Gen. Corp.,*
    894 F.2d 1114 (9th Cir. 1990)...............................................................11

ii

*GOTO.COM v. The Walt Disney Co.,*
   202 F.3d 1199 (9th Cir. 2000)............................................................6,8,11,14

*Hormel Foods Corp. v. Jim Henson Prods.,*
   73 F.3d 497 (2d Cir. 1996)...............................................................7

*Helene Curtis Industries v. Church & Dwight Co., Inc.,*
   560 F.2d 1325 (7th Cir. 1977)..............................................17

*In re Mack,*
   197 U.S.P.Q. 755 (TTAB 1977).........................................................10

*James Burrough Ltd. v. Beefeater, Inc.,*
   540 F.2d 266 (7th Cir. 1976)..........................................................15

*New West v. NYM Corp. of Cal.,*
   595 F.2d 1194 (9th Cir. 1979)...........................................................9

*Novelty Textile Mills, Inc. v. Joan Fabrics Corporation,*
   558 F.2d 1090.........................................................................16

*Omega Importing Corp. v. Petri Kine Camera Co.,*
   451 F.2d 1190 (2d Cir. 1971).........................................................15

*O'Neill v. Dell Publishing Co., Inc.,*
   630 F.2d 685 (1st Cir. 1980)............................................................13

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,*
   274 F.2d 487 (2d Cir. 1960)............................................................13

*Power Test Petroleum Distributors, Inc. v. CalCu Gas, Inc.,*
   754 F.2d 91 (2d Cir. 1985)...........................................................15-16

*Regents of the University of California v. ABC, Inc.,*
   747 F.2d 511 (9th Cir. 1984)............................................................16

*Roth Greeting Cards v. United Card Co.,*
   429 F.2d 1106 (9th Cir. 1970)..........................................................13

*Steinway & Sons v. Robert Demars & Friends,*
   210 U.S.P.Q. 954 (C.D. Cal. 1981)..................................................15,16

*Taco Cabana v. Two Pesos,*
   505 U.S. 763 (1992)...................................................................8

iii

*Teletech Customer Care Management, Inc. v. Tele-Tech Company,*
    977 F.Supp. 1407 (C.D. Cal. 1997)...............................................14

*West Publishing Co. v. Mead Data Central, Inc.,*
    799 F.2d 1219 (8th Cir. 1986) *cert. denied,* 107 S.Ct. 962 (1987)..............16

## FEDERAL STATUTES

15 U.S.C. § 1058................................................................................10
15 U.S.C. § 1065...........................................................................2,7,10
15 U.S.C. § 1115.........................................................................2,7-8,10
15 U.S.C. § 1116(a).............................................................................5,6
15 U.S.C. § 1125(c)(1)........................................................................2,6
17 U.S.C. § 102..................................................................................12
17 U.S.C. § 410(c)..............................................................................12
Fed. R. Civ. P. 65.................................................................................5

## STATE STATUTES

Cal. Bus. & Prof. Code § 14330.............................................................6

## MISC.

*McCarthy on Trademarks and Unfair Competition* § 24:104............................7
*McCarthy on Trademarks and Unfair Competition* § 30:2..............................14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE
APPLICATION FOR A TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Kippys, Inc. (hereinafter "Kippys") submits this brief in support of its Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction against Defendants About Attitude, Kim Logue, and Does 1 through 50 (hereinafter collectively referred to as "Defendants").

This memorandum will demonstrate: (i) Kippys' probable success on the merits; (ii) the existence of irreparable injury to Kippys if the injunction is not granted; (iii) that the balance of the equities favors Kippys; and (iv) that it is in the public interest.

### II. STATEMENT OF FACTS

**A.    Kippys' Trademarks**

Kippys is the manufacturer and distributor of the famous "Kippys" line of western and contemporary apparel and accessories distributed throughout the world under the Kippys Marks. (See Declaration of Robert "Bob" Kipperman ("Kipperman Decl." ¶ 3).

Kippys' signature item is its "Big Cowboy Belt" (Model Number B150-BC), which was made famous in 2001 when Madonna was depicted wearing it on the cover of her single, "What it Feels Like for a Girl." (See Exhibit G) Since then, countless other celebrities have been seen wearing Kippys' products. (Kipperman Decl. ¶ 7).

Kippys products are famous for their high quality and attention to detail. The Big Cowboy Belt is made using Italian leather and authentic Austrian Swarovski crystals. Each belt is guaranteed for a lifetime. (Kipperman Decl. ¶ 8).

Kippys merchandise is sold in all the fashion capitals of the western world, including Paris, London, Monte Carlo, Moscow, Dubae, and Beverly Hills. (Kipperman Decl. *at* 9).

In addition to the longstanding, worldwide use and good will mentioned above, Kippys has registered these marks at the United States Federal level and in several

foreign countries.  Presently, Kippys is the owner of the following Federally Registered

trademarks which are incontestable pursuant to 15 USC §§ 1065 and 1115(b):

1.    No. 3,219,265 for "Kippys" (first use and first use in commerce 1948) for

clothing in International Class 25; and

2.    No. 3,219,266 for  "Kippys" (first use and first use in commerce 1948) for

clothing in International Class 25.

Kippys' above-referenced trademarks are hereinafter collectively referred to as

"the Kippys Marks." (*See* Kipperman Decl. ¶ 5; Declaration of Raphael B. Emanuel

("Emanuel Decl.") ¶¶ 4-5; Exhibits A-B).

The words used in the Kippys Marks are not descriptive of belts, clothing, or any

other products or services provided under those respective Marks.  (Kipperman Decl. ¶

12). Therefore, the Kippys  Marks, and each of them, are inherently distinctive.

In addition, as a result of Kippys' efforts through advertising, promotions, sales,

and customer service, as well as favorable recommendations by Kippys' customers,

Kippys belts, clothing and accessories have achieved enormous popularity among the

public. (Kipperman Decl. ¶ 13).  As a result of these efforts and Kippys' exclusive use of

the Kippys Marks, the Kippys Marks have acquired substantial goodwill and secondary

meaning for a long period of time, serving as an indicator of Kippys as the source of

origin of its products. (Kipperman Decl. ¶ 14).

By virtue of the inherent and acquired distinctiveness of the Kippys Marks; the

long duration and worldwide usage exclusively by Kippys of the Kippys Marks for belts,

clothing, and related products; Kippys' extensive advertising and publicity of the Kippys

Marks; and the extremely high degree of recognition of the mark in the trading areas and

channels of trade used by Kippys; each of the Kippys Marks, are famous under 15 U.S.C.

§ 1125(c)(1) of the Federal Trademark Dilution Act of 1995.

**B.     Kippys' Copyrights**

Kippys is the owner of the following pending U.S. copyright application: "Kippys Big Cowboy Belt" (creation completed 2001) for a work of the visual arts, hereinafter referred to as "the Kippys Copyrights." (*See* Kipperman Decl. ¶ 6; Emanuel Decl. ¶ 6-7; Exhibit C).

**C. Defendants' Unlawful Conduct: Trademark Dilution, Trademark Infringement, Unfair Competition and Copyright Infringement**

Kippys recently became aware that Defendants have been using Kippys Marks to sell shoddy or inferior goods and to tarnish Kippys reputation and good name for a commercial purpose.   (Kipperman Decl. ¶ 16).  The use of these marks is also likely to confuse the public as to the source of the goods that Defendants are selling.

Kippys is informed and believes that Defendants have manufactured and sold belts by using Kippys' distinctive trademarks and trade name. (Kipperman Decl. ¶ 15).

Kippys is further informed and believes that Defendants had access to Kippys belts and purposely reproduced, displayed and distributed a substantially similar belt in violation of Kippys' copyrights. (Kipperman Decl. ¶ 15).

Kippys first became aware of Defendants' wrongdoing after seeing a three page spread in the March 2008 issue of People Magazine (hereinafter "People"). (See Exhibit D). Depicted in the spread are celebrities wearing various articles of clothing and accessories, each with the blurb "Get the Look!" and purchasing information. One of the items depicted is Kippys' signature belt, the "Big Cowboy" (Model B150-BC). Celebrity Gretchen Wilson is shown in three photos wearing legitimate Kippys belts. The blurb "KIPPYS BELT" is prominently displayed across the photos. Adjacent to the photos is the blurb "Get the Look!" along with purchasing information directing readers to Defendant's website, "aboutattitude.com." A fourth belt is shown next to the purchasing

1  information. This belt looks very similar to those depicted on Gretchen Wilson, but on

2  close inspection appears to lack the superior level of craftsmanship that Kippys is known

3  for. Specifically, Kippys is known for using genuine Swarovski crystals on its Big

4  Cowboy belt. The crystals span the entire length of the belt, ending at the buckle. The

5  crystals on the belt depicted for sale are described as "rhinestones" and do not extend all

6  the way to the buckle. (Kipperman Decl. ¶ 17).

7  Defendants further capitalize on the Kippys marks and copyrights through their

8  website, "aboutattitude.com." The website blatantly references the infringing People

9  spread by depicting belts with the caption "As Seen In People Rhinestone Belt." [Please

10  note that as of March 1, 2008, Defendants' website now displays the belt next to a picture

11  of the March 2008 issue of People]. (See Exhibits E and F).

12  Defendants have no right, license or other authority from Kippys to use any of the

13  Kippys Marks or Kippys Copyrights for any purpose. (Kipperman Decl. ¶ 19).

14  Kippys is informed and believes that Defendants knew of the Kippys Marks and

15  Kippys Copyrights and that the same were owned by someone other than themselves;

16  knew that the Kippys Marks were distinctive and famous; and knew that Defendants had

17  not received any authority from Kippys to use the Kippys Marks or Kippys Copyrights

18  for any purposes. (Kipperman Decl. ¶ 20).

19  Defendants' unlawful activities result in irreparable injury and damage to Kippys'

20  reputation by using the Kippys Marks for commercial purposes and in a manner beyond

21  Kippys' control.  Kippys is informed and believes, and on such basis alleges, that

22  Defendants have deliberately, willfully, and maliciously used the Kippys Marks in order

23  to trade on the goodwill that Kippys has attained in the Kippys Marks, to dilute and

24  tarnish the Kippys Marks and to confuse the public into believing that Defendants'

25  unauthorized use is licensed or authorized by Kippys. (Kipperman Decl. ¶ 21).

26  Defendants' unlawful sales of belts whose designs are substantially similar to the

27  Big Cowboy Belt, in circumstances where Defendants had access to such design,

28

4

infringes on the Kippys Copyrights. This willful infringement results in irreparable harm to Kippys.

## III. DISCUSSION

### A. Standards for Issuing a Temporary Restraining Order and Preliminary Injunction

It is well-settled that district courts have the power and authority to issue temporary restraining orders and orders to show cause why a preliminary injunction should not issue, and to do so on an ex parte basis. The requirements for ex parte restraining orders are governed by Rule 65 of the Federal Rules of Civil Procedure. Rule 65 provides, in pertinent part:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required.

Fed.R.Civ.P. 65(b). Additionally, the *Local Rules of the United States District for the Southern District of California* provide for the issuance of ex parte temporary restraining orders and orders to show cause. (Local Rule 83.3(h)).

A Temporary Restraining Order and Preliminary Injunction restraining acts of trademark infringement and unfair competition is a well-established remedy in this Circuit. 15 U.S.C. §1116(a) provides, in pertinent part:

> The several courts vested with jurisdiction of civil actions arising under this Act shall have power to grant injunctions, according to the principles

> of equity and upon such terms as the court may deem reasonable, to
> prevent the violation of any right of the registrant of a mark registered in
> the patent and Trademark Office or to prevent a violation under section
> (a), (c), or (d) of section 1125 of this title.

15 U.S.C. §1116(a).  *See also GOTO.COM v. The Walt Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir. 2000); *Brookfield Communications, Inc. v. West Coast*, 174 F.3d 1036, 1046 (9th Cir. 1999).

For the issuance of a preliminary injunction in this Circuit, a plaintiff must show either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in the moving party's favor. *Brookfield*, 174 F.3d at 1046.  As shown below, Kippys satisfies these standards for the issuance of the requested injunctive relief, to wit: (i) Kippys will most likely succeed on the merits of its claims; (ii) Kippys will be irreparably injured if the injunction is not granted; (iii) the balance of the equities favors Kippys; and (iv) it is in the public interest that Defendants' conduct be enjoined.

**B.    Likelihood of Success on the Merits – Trademark Dilution, Trademark Infringement, Copyright Infringement and Unfair Competition**

**1.    Trademark Dilution**

A trademark is tarnished when consumer capacity to associate it with the appropriate products or services has been diminished.  State trade name dilution under California Business & Professions Code § 14330  parallels the federal cause of action and is designed to protect strong, well recognized marks, while the federal statute protects marks which are famous under 15 U.S.C. § 1125(c)(1).  (*See AccurideInternational, Inc. v. Accuride Corporation*, 871 F.2d 1531 (9th Cir. 1989)).  As noted above, the Kippys Marks are famous.

Dilution by tarnishment arises when the goodwill and reputation of a plaintiff's trademark is linked  to products which are of a shoddy quality or which conjure

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

1 associations that clash with the associations generated by the owner's lawful use of the

2 mark. (*McCarthy on Trademarks and Unfair Competition* §24:104). "The sine qua non

3 of tarnishment is a finding that plaintiff's mark will suffer negative associations through

4 defendant's use." *Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497 (2d Cir.

5 1996).

6     Defendants' use of the Kippys Marks in association with inferior quality goods

7 obviously tarnishes the Kippys Marks. The association of Kippys with such material

8 dilutes the strength of the Kippys Marks and results in an unwanted and unauthorized

9 association with material that is damaging to Kippys' reputation and goodwill.

10     **2.    Trademark Infringement and Unfair Competition**

11     To prove infringement or unfair competition, Kippys must show two essential

12 elements: 1) that the trademark is valid; and 2) that the manner in which Defendants used

13 the trademark is likely to cause confusion.

14     **a.    The Kippys Marks Are Valid**

15     Section 1115(a) of Title 15 U.S.C. provides that a federal registration of a

16 trademark shall constitute prima facie evidence of the "validity of the registered mark . . .

17 and of the registrant's exclusive right to use the registered mark in commerce on the

18 goods or services specified in the registration." 15 U.S.C. §1115(a).   The federally

19 registered Kippys Marks are thus valid and protectable and even incontestible under 15

20 U.S.C. § 1065. Submitted herewith as Exhibits A and B are true and correct copies of

21 Kippys' federal trademark registrations and filing receipts in applications.  (Emanuel

22 Decl. ¶ 4-5).

23     As further provided in the trademark laws:

24     To the extent that the right to use the registered mark has become
incontestible under section 1065 of this title [Title 15], the registration
25 shall be conclusive evidence of the validity of the registered mark and of
the registration of the mark, of the registrant's ownership of the mark, and
26 of the registrant's exclusive right to use the mark in commerce . . .

27

28
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE
APPLICATION FOR A TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION**

15 U.S.C. § 1115(b). On this basis alone, Kippys is entitled to the widest possible protection for its Kippys Marks.

The Kippys marks are also valid and protectable notwithstanding the federal registrations, since they have acquired secondary meaning and are inherently distinctive. *See Taco Cabana v. Two Pesos*, 505 U.S. 763, 768; 772 (1992); Kipperman Decl. ¶ 12.

Therefore the Kippys Marks are valid and protectable.

### b. Defendants' Use of the Kippys Marks Is Likely to Cause Confusion Among the Public.

The universal test for federal trademark infringement is whether there is likelihood of confusion as to affiliation, connection, association, origin, sponsorship or approval. *GOTO.COM v. The Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). In the Ninth Circuit, the test for likelihood of confusion is set forth in *AMF v. Sleekcraft*, 599 F.2d 341, 348-49 (9th Cir. 1979). In *AMF*, the Ninth Circuit set forth eight relevant factors to be considered in determining whether confusion between related goods is likely. These factors are:

(1)  the strength of the allegedly infringed marks;

(2)  the proximity or relatedness of the goods and services;

(3)  the similarity of sight, sound and meaning of the marks;

(4)  evidence of actual confusion;

(5)  the degree to which marketing channels converge;

(6)  the type of goods and the degree of care consumers are likely to exercise in purchasing them;

(7)  the intent of the defendant in selecting the allegedly infringing mark; and

(8)  the likelihood that the parties will expand their product lines.

*Id*. The relevant factors will be addressed individually below.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

1      The standard for infringement, unfair competition or false designation of origin

2    is the same under both Federal and California law.  As stated in *New West v. NYM Corp.*

3    *of Cal.*, 595 F.2d 1194 (9th Cir. 1979):  "Whether we call the violation trademark

4    infringement, unfair competition or false designation of origin, the test is identical - is

5    there a 'likelihood of confusion?" *Id.* at 1201.

6      Defendants have used the Kippys Marks without a license or any other form of

7    consent from Kippys. (Kipperman Decl. ¶ 19). Likelihood of confusion is intended and

8    apparent given Defendants' purposeful use of the Kippys name to generate sales of

9    Defendants' own goods. (Kipperman Dec. ¶ 17). Defendants' actions thus constitute a

10   willful attempt to secure additional belt and other accessory sales by using the Kippys

11   Marks without license.

12

13         **(1) Strength of the Kippys Marks**

14     As described by the Court in *AMF*, the types of marks are: arbitrary or fanciful,

15   suggestive, and descriptive.  Arbitrary or fanciful marks are terms which, when used with

16   the goods or services at issue, neither suggest nor describe any attribute of those goods or

17   services and are inherently strong marks.  *AMF*, 599 F.2d at 349.  Such marks are

18   afforded the widest ambit of protection from infringing uses.  *Id.*  A descriptive mark

19   tells something about the product and will be protected only when secondary meaning is

20   shown.  In between lie suggestive marks which subtly connote something about the

21   products.  Although less distinctive than an arbitrary or fanciful mark, a suggestive mark

22   will be protected without proof of secondary meaning.  *Id.*

23     Here, the Kippys Marks are completely arbitrary in connection with the goods

24   addressed in the present action, namely belts. (Kipperman Decl. ¶ 12). The Kippys Marks

25   are thus inherently strong and distinctive marks. (Kipperman Decl. ¶ 12).

26     Furthermore, the Ninth Circuit has held that "[federally] registered trademarks are

27   presumed to be distinctive and should be afforded the utmost protection." *Americana*

28

9

*Trading, Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir. 1992).  As applied to a descriptive mark, federal registration carries a presumption of secondary meaning. Defendants therefore have the burden of proving that secondary meaning has not attached if they wish to argue that the Kippys Marks are weak.  *Americana Trading*, 966 F.2d at 1287.

Kippys is the owner of the above-mentioned federally registered trademarks. Through Kippys' continuous use for well over five years of many of these registered marks, and the absence of any successful or pending challenge of Kippys' use of the marks, the marks are afforded the status of incontestability pursuant to 15 U.S.C. §§ 1058, 1065, and 1115(b).

Furthermore, a mark may be strengthened by extensive advertising, length of time in business, public recognition and uniqueness.  *Century 21 v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988).  Kippys' products have been in the marketplace under the Kippys Marks since 1948. (Kipperman Decl. ¶ 5). Since at least 2001, when Madonna first wore the Kippys Big Cowboy Belt on the cover of her single, "What It Feels Like for a Girl," the belt has been an icon of contemporary western apparel. (Kipperman Decl. ¶ 7).

From the foregoing, it is clear that the Kippys Marks are extremely strong and distinctive. Therefore, these factors strongly favor Kippys.

> **(2)    The Similarity of the Marks in Sight, Sound and Meaning.**

The similarity of the marks is tested on three levels: sight, sound and meaning. *AMF*, 599 F.2d *at* 351.  Each mark must be considered as they are encountered in the marketplace. *Id.*  Similarities weigh more heavily than differences. *Id.* In addition, similarity in any one of these three factors is sufficient to support a finding of likelihood of confusion.  *In re Mack*, 197 U.S.P.Q. 755 (TTAB 1977).

Here, the parties' marks are extremely similar in sight, sound and meaning. (Kipperman Decl. ¶ 16; Section II.c, *supra*). See Facts. In fact, Defendants use the

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

identical word, "Kippys," in conjunction with its feature in People magazine. (Kipperman Decl. ¶ 17).

Therefore, this factor also strongly favors Kippys.

### (3)    Likelihood of Confusion is Established by The Evidence of Actual Confusion.

The Ninth Circuit has repeatedly held that "because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Brookfield Communications, Inc. v. West Coast Entertainment Corporation*, 174 F.3d 1036, 1050 (citing *Eclipse Associates, Ltd v. Data Gen. Corp.*, 894 F.2d 1114, 1118-19 (9th Cir. 1990); *AMF*, 599 F.2d at 353). While evidence that the use of two marks has already led to confusion is persuasive proof that future confusion is likely, the converse is not true. *GOTO.COM*, 202 F.3d at 1208. Indeed in *Brookfield* there was no possibility of actual confusion since the plaintiff filed suit before the defendant began using the allegedly infringing mark. Nevertheless, the court still found for the plaintiff. 174 F.2d at 1060.

Kippys believes confusion is unavoidable since Kippys has a strong and well known presence and customers have come to associate the Kippys Marks with its products. (Kipperman Decl. ¶¶ 9, 11). The fact that Defendants chose the Kippys Marks and distinctive script for the purpose of selling its products, because of the Kippys Marks' high recognition factor, strongly suggests that Defendants were counting on public confusion through its use of the Kippys Marks.

### (4)    The Degree Marketing Channels Converge

The marketing channels in this situation are identical – namely, Clothing.  Thus, this factor weighs strongly in Kippys' favor. (Kippys Decl. ¶¶ 3; 16-17).

### (5)    Defendants' Intent in Selecting the Mark

Defendants clearly chose to capitalize on the famous Kippys Marks because of their fame.  This intentional encroachment without license leads to the inevitable

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

1   conclusion that Defendants had a malicious intent to ride upon Kippys' coat tails and

2   trade upon Kippys' goodwill.

3       **3.      Copyright Infringement**

4       To prove copyright infringement, Kippys must show two essential elements: 1)

5   ownership of the copyright; and 2) copying by the defendant.

6           **a.      Kippys Owns the Kippys Copyrights**

7       Section 410(c) of Title 17 U.S.C. provides that federal registration of a copyright

8   made within five years after first publication of the work shall constitute prima facie

9   evidence of the validity of the copyright . . . [while] the evidentiary weight to be

10  accorded the certificate of registration made thereafter shall be within the discretion of

11  the court. 17 U.S.C. § 410(c). Kippys' copyrights are currently pending registration.

12      Copyright ownership can also be established by a showing that the work is 1) an

13  original work of authorship; and 2) fixed in a tangible medium of expression. 17 U.S.C. §

14  102.

15      A work is considered original if it is an independent creation featuring a modicum

16  of creativity. *See Alfred Bell & Co. v. Cataldo Fine Arts, Inc.,* 191 F.2d 99, 103 (2d Cir.

17  1951). "Originality in this context 'means little more than a prohibition of actual

18  copying.'" *Id.* In this case, Kippys did not copy the design of the Big Cowboy Belt from

19  any source. (Kipperman Decl. ¶ 3).

20      A fixed tangible medium expression is anything "from which [the expression] can

21  be perceived, reproduced, or otherwise communicated, either directly or with the aid of a

22  machine or device." 17 U.S.C. § 102. The Big Cowboy Belt clearly falls within this

23  definition, as a belt is a tangible item that can be perceived and reproduced.

24      Kippys is both the author and the owner of the Big Cowboy Belt design. (See

25  Exhibit C). This fact, taken into account with the validity of the copyright, satisfies the

26  first element of the Copyright infringement cause of action.

27           **b.      Defendants Copied Kippys' Copyrighted Work**

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE
APPLICATION FOR A TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION**

1    Copying is generally established by showing that: 1) the defendant had access to

2    the copyrighted work; and 2) that the offending and copyrighted articles are

3    "substantially similar." *See Atari, Inc. v. North American Philips Consumer Electronics*

4    *Corp.*, 672 F.2d 607, 614 (7th Cir.), *cert. denied*, 459 U.S. 880 (1982); *O'Neill v. Dell*

5    *Publishing Co., Inc.*, 630 F.2d 685, 686 (1st Cir. 1980).

6    Access to the copyrighted work can be established by a showing of widespread

7    dissemination of the work to the public. *Abkco Music, Inc. v. Harrisongs Music, Ltd.*, 722

8    F.2d 988, 998 (2d Cir. 1983) (finding of access based on wide dissemination). In this

9    case, the Big Cowboy Belt has enjoyed worldwide recognition since at least 2001 when

10   Madonna wore it on the cover of her single, "What it Feels Like for a Girl" and during

11   the accompanying *Drowned World* tour. (Kipperman Decl. ¶ 7; Exhibit G). Furthermore,

12   the Big Cowboy Belt is widely available for purchase throughout the United States and in

13   many other countries including France, England and Russia. (Kipperman Decl. ¶ 9).

14   Because the Big Cowboy Belt is so widely available to the public, it is clear that the

15   Defendants had access to it.

16   In determining whether substantial similarity exists between two copyrightable

17   expressions, the "ordinary observer" test is traditionally used. *See, e.g., Peter Pan*

18   *Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). It has been said

19   that this test does not involve "analytic dissection and expert testimony," *Arnstein v.*

20   *Porter*, 154 F.2d 464, 468 (2d Cir. 1946), but depends on whether the accused work has

21   captured the "total concept and feel" of the copyrighted work, *Roth Greeting Cards v.*

22   *United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970). Slight or trivial variations

23   between the works will not preclude a finding of infringement under this test. *Concrete*

24   *Machinery at* 1362. In fact, slight or trivial differences may itself suggest copying,

25   indicating that the infringer attempted to avoid liability by contributing only trivial

26   variations. See *Atari* at 619.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE
APPLICATION FOR A TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION

1    In this case, Defendants' belt is remarkably similar to the Big Cowboy Belt.

2    Nearly every feature of the Big Cowboy Belt has been replicated on Defendants' belt.

3    (Kipperman Decl. ¶ 15). Both belts feature a row of clear round stones surrounded by

4    smaller clear round stones and metal studs, laid out in identical configurations.

5    (Kipperman Decl. ¶ 15). The belts feature a nearly identical flower and stylized vine

6    pattern engraved on the buckle. (Kipperman Decl. ¶ 15). Both belts feature nearly

7    identical flower motifs engraved in metal on the tip of the belt and the buckle return.

8    (Kipperman Decl. ¶ 15). In fact, the only readily discernible difference between the two

9    belts is that the metal studs and crystals do not extend the length of Defendants' belt,

10    whereas the Kippys studs and crystals span the entire length. (Kipperman Decl. ¶ 15).

11    Thus, it is clear that Defendants intentionally and willfully copied the Big

12    Cowboy Belt, making only the minutest of changes, in the hopes of escaping liability for

13    copyright infringement.

14    **C.    Irreparable Injury**

15    1.    **Irreparable Injury Based on Trademark Infringement,**
          **Trademark Dilution and Unfair Competition**
16

17    It is axiomatic that:

18    ". . . [T]he owner of a trademark [is] damaged by infringing use 'which place[s]

19    the owner's reputation beyond its control, though no loss of business is shown.'

20    Damages caused by trademark infringement are 'by their very nature irreparable and not

21    susceptible of adequate measurement for remedy at law.'" *See* McCarthy, Trademarks

22    and Unfair Competition, § 30:2 (4th Ed. 2000) (citations omitted); *see also Teletech*

23    *Customer Care Management, Inc. v. Tele-Tech Company*, 977 F.Supp. 1407, 1412 (C.D.

24    Cal. 1997) (In both trademark infringement and trademark dilution cases, where it is

25    established that there is a likelihood of success on the merits, for purposes of a

26    preliminary injunction, irreparable injury is presumed); *Brookfield*, 174 F.3d at 1066;

27    *GOTO.COM*, 202 F.3d 1205.

28
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE
APPLICATION FOR A TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION**

1   The function of a trademark is to identify the source or sponsorship of particular

2   goods and/or services and, coincident with that function, a trademark symbolizes the

3   goodwill of the owner's business.  When an infringer uses a confusingly similar

4   trademark, the original owner loses control over the goodwill established by his

5   trademark, resulting in an injury which is impossible either to assess or compensate.  The

6   Ninth Circuit has stated: "It is axiomatic that use by [plaintiff's] competitors, of a

7   trademark to which it has exclusive rights, gives rise to the possibility that [plaintiff] will

8   be irreparably injured." *California Cedar Products Co. v. Pine Mountain Corp.*, 724 F.2d

9   827, 831 (9th Cir. 1984).

10      In *Citibank N.A. v. City Bank of San Francisco*, 206 U.S.P.Q. 997, 1007 (N.D.

11  Cal. 1980), the court stated: "The fact that plaintiff has had the symbol of its reputation

12  placed in the hands of another is irreparable injury."  In *Steinway & Sons v. Robert*

13  *Demars & Friends*, 210 U.S.P.Q. 954 (C.D. Cal. 1981), the court reviewed the relevant

14  case law and noted: "trademark infringement causes irreparable injury and necessitates

15  immediate injunctive relief is universally recognized in the courts of this circuit."  *Id. at*

16  962 (citations omitted).  Indeed, to place control of the goodwill and reputation

17  associated with the mark in question out of the reach of the mark's owner clearly

18  constitutes irreparable injury.  *James Burrough Ltd. v. Beefeater, Inc.*, 540 F.2d 266, 267

19  (7th Cir. 1976); *Omega Importing Corp. v. Petri Kine Camera Co.*, 451 F.2d 1190 (2d

20  Cir. 1971); *Power Test Petroleum Distributors, Inc. v. CalCu Gas, Inc.*, 754 F.2d 91 (2d

21  Cir. 1985).

22      The court, in *Power Test* clearly articulated this principle:

23      The first element, irreparable injury, exists in a trademark case when the
        party seeking the injunction shows that it will lose control over the
24      reputation of its trademark pending trial. Reputation is not calculable nor
        precisely compensable. In this instance it rests on Power Test's activities
25      in distributing the gasoline, and may very well diminish as a result of
        confusion caused by Yonker's selling of non-Power Test gasoline from a
26      Power Test franchised location. Accordingly, the District Court did not

27

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE
APPLICATION FOR A TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION

err in concluding that irreparable injury flowed from the trademark infringement.

*Id.* Similarly, the dilution of a distinctive trademark is an equally irreparable injury which justifies preliminary relief. As the court held in *Steinway & Sons v. Robert Demars & Friends*, 210 U.S.P.Q. 954, 962 (C.D. Cal. 1981): "A preliminary injunction will also issue to combat the threat of irreparable injury arising from the likelihood of dilution of a distinctive trademark. The irreparable harm is the damage which will be done to plaintiff's mark itself. . ."

As more fully detailed in the Declaration of Bob Kipperman submitted herewith, Defendants' unauthorized use of the Kippys Marks has, and will continue to, cause Kippys irreparable injury to its reputation. Kippys submits that irreparable injury is the inevitable result of Defendants' actions and is established by Kippys' probable success on the merits of its claims for trademark dilution, trademark infringement, copyright infringement and unfair competition.

Kippys' reputation has and will continue to be damaged by the commercial use of its trademarks and over which Plaintiff cannot exercise any control. *See Regents of the University of California v. ABC, Inc.*, 747 F.2d 511, 519-20 (9th Cir. 1984). The irreparable injury to Kippys and to the public weigh strongly in favor of granting the requested relief. The damage to Kippys' reputation and goodwill, as well as the loss of control over the merchandise which uses its trademarks and copyrights, is not compensable with money.

In copyright cases, irreparable harm is usually presumed if likelihood of success on the copyright claim has been shown. *West Publishing Co. v. Mead Data Central, Inc.*, 799 F.2d 1219, 1229 (8th Cir. 1986), *cert. denied*, 107 S.Ct. 962 (1987); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254, *cert. dismissed*, 464 U.S. 1033 (1984); *Atari, Inc.*, 672 F.2d at 620 (7th Cir. 1982); *Novelty Textile Mills, Inc.*, 558 F.2d at 1094 (2d Cir. 1977). In fact, "[t]here is, therefore, no need actually to prove

16

irreparable harm when seeking an injunction against copyright infringement." *Concrete Machinery Company, Inc. v. Classic Lawn Ornaments, Inc.*, 6 U.S.P.Q.2d 1357, 1365-66.

In this case, because Kippys sets forth a prima facie case for copyright infringement, the requirement of irreparable harm based on that cause of action is clearly satisfied.

### D.    The Balance of Hardships Favors Kippys

There would be no hardship whatever to Defendants in granting this application. Defendants have no right to use the Kippys Marks or Kippys Copyrights. Any argument that they would suffer pecuniary loss as a result of being enjoined from using the Kippys Marks or Kippys Copyrights, which they have no right to use, cannot stand. *See Helene Curtis Industries v. Church & Dwight Co., Inc.,* 560 F.2d 1325, 1333 (7th Cir. 1977).

On the other hand, the hardship Kippys faces is more than potential, it is real and it is serious. Having its trademarks and copyrights used on belts and other clothing and accessories, the content of which it has no control or direction over, presents a very difficult and harmful situation for Kippys. Without an injunction, the Kippys Marks and Kippys Copyrights will continue to be used in ways in which Kippys does not wish associated with its marks and copyrights. The potential public confusion as to whether such goods are legitimate, Kippys-authorized, goods is self-evident. The resultant harm would be immeasurable.

### E.    The Issuance of an Ex Parte Restraining Order is An Appropriate Remedy

Kippys fears that by the time a hearing on a Motion for Preliminary Injunction would be held, Defendants would continue to trade upon and tarnish the good name and reputation of Kippys, thereby irreparably harming Kippys' goodwill in its Kippys Marks and Copyrights.

## IV. CONCLUSION

Based on the foregoing, Kippys respectfully requests that this Court enter the requested Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction.  Kippys has clearly demonstrated that: (i) it will likely succeed on the merits of its claims; (ii) absent the issuance of the requested orders Kippys will suffer

irreparable injury; (iii) the balancing of the hardships favors Kippys; and (iv) it is in the interests of the consuming public to be free from confusion.

Respectfully submitted by,

YANNY & SMITH

Dated: March 3, 2008

Joseph A. Yanny

18